Commonwealth *v.* Hannah, Appellant.

Argued September 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Mark A. Lublin,* for appellant.

*Bonnie B. Leadbetter,* Assistant District Attorney, with her *Mark Sendrow* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P. J., December 11, 1974:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Criminal Division, of Philadelphia County by the defendant-appellant, John Hannah, after conviction before a judge without a jury of burglary, larceny and receiving stolen goods. Post-trial motions were denied and he was sentenced to a

term of one and one-half (1½) to five (5) years in a correctional institution.

The defendant was charged with the burglary of the Delmonico Sound Equipment Warehouse in Philadelphia. At the time of the incident, he was a Philadelphia police officer in uniform. After his arrest, he was questioned by other officers who gave him appropriate *Miranda* Warnings and also warned him pursuant to the requirements of the Philadelphia Home Rule Charter that he would lose his job if he refused to cooperate fully with the investigation.

The defendant filed a motion to suppress a written confession given on the ground that the "charter warnings vitiated the Miranda Warnings." The court below suppressed the confession. An appeal to this Court was filed in October Term, 1973. On October 4, 1973, an order of judgment of Non Pros. was entered for failure to prosecute the appeal. Thereafter the court below permitted this appeal, nunc pro tunc.

The serious question raised by this appeal is whether the suppressed confession of the appellant may be used by the Commonwealth for cross-examination as to prior inconsistent statements.

The same question was raised in *Harris v. New York,* 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971). In that case, the defendant was charged with sales of heroin to an undercover agent. After his arrest, he made statements that were suppressed owing to the failure of proper *Miranda* Warnings. The defendant took the stand and denied having sold narcotics to the undercover agent. "On cross-examination, petitioner was asked seriatum whether he had made specific statements to the police immediately following his arrest on January 7—Statements that partially contradicted petitioner's direct testimony at trial." The trial judge cautioned the jury to consider the statements so used for purposes of impeachment, and not as substan-

tive evidence. On these facts, the Supreme Court of the United States affirmed, holding that it is permissible to cross-examine a defendant upon his prior inconsistent statements, even though they were obtained in violation of *Miranda* and suppressed.

In the instant case, the appellant denied having received any merchandise from the warehouse, but testified that the only merchandise he placed in his patrol car were the two stereos reported by the police officers. He testified that these were unclaimed property which he and his co-defendant had found in the parking lot; that there were no other boxes, and thus, his intention was to take them to district headquarters to make up a property report after his co-defendant had completed his assignment. He was then asked on cross-examination whether or not he had given a statement which contradicts some of his testimony as follows: "Do you recall giving a statement to Detective Fry on December 25, 1971, in which you stated: 'Policeman Triplett and I proceeded into the warehouse, and we observed some boxes of televisions on the floor to the left of the door, and approximately 50 feet to 75 feet from the platform. Officer Triplett along with myself picked up two boxes apiece and took them to the area of the platform. We did this approximately two or three times stacking up approximately eight televisions. At this time, Triplett left the platform and proceeded to open the trunk of Radio Patrol Car 396. I remained on the platform inside the warehouse. Then I began to hand the televisions to Triplett who then placed them into the trunk of the radio patrol car. This happened approximately eight television sets.' "

Counsel for the defendant vigorously objected to the question asked and moved for a mistrial. The court overruled the objection and dismissed the motion. The defendant admitted that he gave the statement to the police. The court indicated in argument that he gave

the statement to the police. The court indicated in argument that the testimony was admitted solely for impeachment purposes and not as substantive evidence. As this was a waiver of jury trial, we can conclude that the court below followed his own precept. *Commonwealth v. Moore*, 443 Pa. 364, 279 A. 2d 179 (1971). Since the suppressed statements were used in the same identical manner as approved in *Harris v. New York*, supra, we find no error. The Supreme Court in *Harris*, supra, said at 225-226: "every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment. The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We held, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements."

And as contended by the Commonwealth: "Moreover, none of Miranda's purposes have been impaired by the use of this appellant's statements for impeachment. It is uncontested that appellant was fully aware of his rights at the time he gave his statement, since he was himself an experienced police officer. The statement was not unreliable; suppression was granted because inconsistent warnings were given, not because of any coercion of a sort which is likely to elicit a false confession. It was not and cannot be under Harris used as substantive evidence. Harris impeachment can never

shore up a weak Commonwealth case, nor be used as a basis for conviction. It may only be used to prevent the defendant using the Fifth Amendment as a tool to defraud the fact-finder at trial."

It is possible, of course, that the Pennsylvania Supreme Court has the power to refuse to follow *Harris,* supra, by the exercise of its supervisory powers and hold that the use of uncounseled statements are barred for use for any purpose but no such action has yet been taken. Cases cited by the appellant are grounded in federal constitutional law. In *Harris,* supra, it was made crystal clear that: "Some comments in the Miranda opinion can indeed be read as indicating a bar to use of an uncounseled statement for any purpose, but discussion of that issue was not at all necessary to the Court's holding and cannot be regarded as controlling. Miranda barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel. It does not follow from Miranda that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards."

It is clear, therefore, that prior Pennsylvania cases were based on the federal Constitution and are superseded by *Harris,* supra. If the Pennsylvania Supreme Court wishes to institute a stricter state rule, it must promulgate one. So far, after two years, it has not done so. In the meanwhile, the following States' Supreme Courts have followed *Harris,* supra: Wisconsin, Arkansas, Colorado, Massachusetts, Washington, Florida, Illinois, North Carolina and Louisiana.

Two eyewitnesses testified that they observed the handing out of the television sets from the warehouse by the defendant to his co-defendant.

One of the eyewitnesses was the service manager of Delmonico and the other was a police officer who also testified that the appellant offered him a television set. This testimony and the testimony of the appellant made easy the finder of fact's determination of credibility.

An examination of the trial judge's opinion indicates clearly that his credibility determination was based on the consistency of the Commonwealth's testimony coupled with the sheer unbelievability of the defendant's testimony. The Commonwealth's evidence was abundantly sufficient to convict without the impeaching testimony.

Judgment of sentence affirmed.

CONCURRING OPINION BY HOFFMAN, J.:

I agree with the decision of the Majority to affirm the judgment of sentence. I disagree, however, with the Majority's conclusion that *Harris v. New York*, 401 U.S. 222 (1971), expresses the law of this Commonwealth.

In *Commonwealth v. Padgett*, 428 Pa. 229, 237 A. 2d 209 (1968), our Supreme Court held that a confession which is inadmissible as part of the Commonwealth's case in chief may not be used at trial *for any purpose*. See also, *Commonwealth v. Robinson*, 428 Pa. 458, 239 A. 2d 308 (1968). *Harris* held, as a matter of federal constitutional law, that an otherwise inadmissible statement may be used for impeachment purposes. The Majority argues that the *Harris* rule applies in Pennsylvania because it has not yet been specifically rejected by our Supreme Court. The applicable precedent would seem to indicate the opposite.

The Pennsylvania Supreme Court's first opportunity to adopt the *Harris* rule arose in *Commonwealth v. Williams*, 443 Pa. 85, 277 A. 2d 781 (1971). Because no objection was made at trial, the Court held that the appellant was precluded from challenging the prosecu-

tion's use of inadmissible statements for impeachment purposes. Mr. Justice EAGEN's dictum to the effect that "Williams' position is untenable in view of the recent decision of the United States Supreme Court in Harris v. New York. . . .", 443 Pa. at 92, 277 A. 2d at 785, was not part of the holding of *Williams*. As Mr. Justice ROBERTS noted in his brief concurring opinion: "[O]ur decision today in no way constitutes this Court's adoption of the rule recently enunciated . . . in Harris v. New York. . . . That issue was neither raised, briefed, nor argued before our Court." Id.

In *Commonwealth v. Woods*, 455 Pa. 1, 312 A. 2d 357 (1973), our Supreme Court again refused to adopt the *Harris* rationale as the law of Pennsylvania, and held it inapplicable to the facts presented by *Woods*:[1] "Since the *Harris* decision, we have not had occasion to consider the wisdom of allowing the use of a defendant's suppressed statements for limited impeachment purposes. We do not find it necessary to do so in this appeal since we agree with the appellant that the *Harris* rule does not apply to this case." 455 Pa. at 3, n.*, 312 A. 2d at 358, n.*. Mr. Justice ROBERTS, in a concurring opinion joined by Mr. Justice O'BRIEN and Mr. Justice NIX, stated that "it is evident that *Harris v. New York* . . . cannot represent the law of this Com-

---

[1] *"Harris*, however, permitted the prosecution to introduce suppressed statements for the purpose of *contradicting alleged false statements made by the defendant while testifying*. *Harris* allowed the introduction of suppressed statements which were inconsistent with the defendant's trial testimony—testimony which the prosecution *disputed* during its case in chief. . . . If the testimony of the prosecution's witnesses was truthful, the defendant was committing perjury." 455 Pa. at 3, 312 A. 2d at 358. In *Woods*, however, the defendant's testimony was in complete accord with the prosecution's case in chief. Thus, there was no attempt to prevent alleged perjury, but only an attempt to impeach the appellant's credibility by placing before the jury a prior inconsistent statement.

monwealth." 455 Pa. at 7, 312 A. 2d at 360.[2] This Court has also reaffirmed the *Padgett* rule in a case postdating *Harris*. *Commonwealth v. Tull*, 224 Pa. Superior Ct. 494, 307 A. 2d 318 (1973).

In matters of federal constitutional law, the courts of this Commonwealth are bound by United States Supreme Court decisions. *Commonwealth v. Ware*, 446 Pa. 52, 284 A. 2d 700 (1971). *Harris* holds, in effect, that the *Padgett* rule is not required under the federal constitution. This does not mean that *Padgett* no longer expresses the law of Pennsylvania. This Court should not treat a United States Supreme Court decision as overruling *sub silentio* prior decisions of our own Supreme Court which yielded a broader rule. *Padgett* remains the law of Pennsylvania until our Supreme Court states otherwise.

In any event, the Majority's reliance on *Harris* is misplaced. The statement at issue was suppressed because the Home Rule Charter warnings vitiated the *Miranda* warnings. Thus, the statement was not taken in violation of *Miranda*, but was involuntarily given. In *Harris*, the petitioner made "no claim that the statements made to the police were coerced or involuntary." 401 U.S. at 224. Further, the Court noted that "Miranda barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel. It does not follow from Miranda that evidence inadmissible against an accused in the prosecution's case in chief is barred

---

[2] Both the Majority and Concurring Opinions in *Woods* agree that the *Harris* rule has met with severe criticism from the commentators. See *Dershowitz & Ely, Harris v. New York: Some Anxious Observations on the Candor and Logic of the Emerging Nixon Majority*, 80 Yale L.J. 1198 (1971); The Supreme Court 1970 Term, 85 Harv. L. Rev. 40 (1971); 10 Duquesne L. Rev. 128 (1971); 45 Temp. L.Q. 118 (1971); 33 U. Pitt. L. Rev. 135 (1971).

for all purposes, *provided of course that the trustworthiness of the evidence satisfies legal standards."* Id. (Emphasis added.) The statement in this case was suppressed because it was given under coercive circumstances, notwithstanding the fact that the police complied with the prophylactic rule of *Miranda.* Therefore, because the constitutional defect rendered the statement unreliable, it should not have been used for any purpose.

Despite the violation of *Padgett,* the judgment of sentence should be affirmed because the Commonwealth's case was clearly sufficient to convict without use of the suppressed statement. The case was tried by a judge sitting without a jury and he failed to credit appellant's version of the incident. Thus, the use of the prior inconsistent statement for impeachment purposes was harmless error. Cf. *Commonwealth v. Tull,* supra.

CERCONE and SPAETH, JJ., join in this concurring opinion.